[No. 34313. Department One. July 10, 1958.]

MOJONNIER AND SONS, INC., *Respondent*, v. RAILWAY EXPRESS AGENCY, INC. *et al., Appellants.*[1]

[1]Reported in 328 P. (2d) 167.

*Kenneth C. Hawkins*, for appellants.

*Lyon & Kohls* and *Ernest Falk*, for respondent.

HUNTER, J.—On June 26, 1948, the plaintiff Mojonnier and Sons, a corporation, delivered a carload of fresh cherries to the defendant Northern Pacific Railway at Sunnyside, Washington, for transportation to Minneapolis, Minnesota. The defendant railway transported the car to Minneapolis, where it was turned over to the defendant Railway Express Agency. At the request of the plaintiff, the car was diverted to Chicago, Illinois, where it arrived on time at 7:05 a. m. on June 30, 1948. In accordance with the usual practice, the car was placed on a "team track" pending decision of the shipper as to whether the cherries would be sold in Chicago or forwarded to another market. At 11:40 a. m. on the same day, a representative of the plaintiff telephoned the defendant express agency informing it to divert the car to Detroit, Michigan. The car was placed on Pennsylvania train No. 200, which departed from Chicago at 11:39 p. m. and did not arrive in Detroit in time for the July first auction. Therefore, the cherries were held over and sold on the next day's market.

The plaintiff thereafter commenced this action against the defendants to recover the sum of $636, with interest, for the loss allegedly suffered by it by reason of a decline in the market value of the cherries between July 1, 1948, and July 2, 1948. The basis of the defendants' liability was alleged to be their failure to transport the car from Chicago to Detroit with reasonable dispatch.

The case was tried to the court. The defendants contended that the car was transported with reasonable dispatch; that there was no unusual or unreasonable delay; and that any delay was attributable to the fact that the plaintiff failed to give notice of diversion within an adequate and reasonable time.

At the conclusion of the trial, the court found that if the defendant express agency had handled the car in the

usual and customary time it could have been placed on *either* Pennsylvania train No. 14, which departed from Chicago at 4:15 p. m., *or* Michigan Central train No. 358, which departed at 7:50 p. m., and would have arrived in time for the July first market; that, by failing to place the car on *either train,* the defendant express agency failed to transport the car with reasonable dispatch. Further, the court found that the defendants failed to show that the unusual and unreasonable delay was not due to their negligence. Judgment was entered accordingly for the plaintiff in the amount of $636, together with interest at the rate of six per cent per annum *from the date of the loss,* July 1, 1948. After the trial court denied the defendants' motion for a new trial, they appealed to this court.

The appellants contend that the trial court erred in finding there had been an unreasonable and unusual delay in dispatching respondent's carload of cherries and in finding they had failed to show the delay was not due to their negligence.

We do not deem it necessary to detail the testimony of respondent's witnesses concerning the issue of *unreasonable delay.* Suffice it to say, the respondent shipper sustained the burden of showing that there was an unreasonable delay in the transportation of the cherries from Chicago to Detroit, or, to state it another way, that in the ordinary course of business if the car had been transported in the usual and customary time *after the diversion order was received* by the appellant express agency, the car would have arrived in Detroit in time for the July first market. (See *Nashville, C. & St. L. Ry. v. Davis,* 21 Tenn. App. 663, 114 S. W. (2d) 830 (1937).)

In *Lamb v. Railway Express Agency,* 51 Wn. (2d) 616, 320 P. (2d) 644 (1958), we said, quoting from 13 C. J. S. 421, § 216:

". . . that when evidence of unusual delay is adduced, a prima facie case of negligence is made out, and the *burden then devolves on the carrier to explain or excuse the delay* and to show that it arose from some cause other

than the carrier's negligence, or that of its agents or servants." (Italics ours.)

Mr. Peter J. King, the general superintendent of transportation of the appellant express agency, in an attempt to explain the delay in transporting the car, testified that when the diversion order was received there was a lack of switching power, and that a switch engine did not arrive at the "team track" until 2:30 p. m., which was not in sufficient time to make the necessary connections with Pennsylvania train No. 14. (This train left Chicago at 4:15 p. m.) Assuming, without deciding, that this would excuse the failure of the appellant to place the respondent's car on Pennsylvania train No. 14, *there is no reasonable explanation in the record why the car was not placed on Michigan Central train No. 358, which departed from Chicago at 7:50 p. m., and was scheduled to arrive in Detroit at 2:35 a. m., July 1, 1948.* Mr. King testified that "in all probability" the Michigan Central would "have missed the Detroit market, as the produce terminal there is not served by the Michigan Central. . . ." However, Mr. G. E. Hore, the superintendent of the northwest division of appellant express agency, testified that four hours would be sufficient time after the car arrived in Detroit to transfer it to the produce terminal. Therefore, if the car had been placed on Michigan Central train No. 358, it would have arrived at the terminal at 6:35 a. m., two hours and twenty-five minutes prior to the opening of the auction at 9:00 a. m. on July 1, 1948. Mr. H. M. O'Neill, manager of the W. S. White Brokerage Company in Detroit, a witness for the respondent, testified that if a car arrived at the auction siding by 9:00 a. m., the car could be auctioned off on that day. He testified further that cars that left Chicago on Pennsylvania train No. 200 (the train on which respondent's car was placed) under normal circumstances and without delay, would be sold the following day at auction. The appellants failed to explain the delay in the instant case which caused the car to miss the July first market.

The respondent established a *prima facie* case of negligence by evidence of an unusual delay, and that the

appellants failed to satisfactorily explain or excuse such delay and show that it arose from some cause other than their negligence. Therefore, the trial court's findings in this respect are correct, and the court properly entered judgment for the respondent in the amount of $636, the loss suffered by the respondent by virtue of the decline in the market value of the carload of cherries.

 Appellant assigns as error the trial court's finding that the respondent is entitled to interest *from the date of the date of loss,* on the ground that under Washington law interest will not be allowed on an unliquidated claim. The respondent recognizes this rule but argues that it does not apply here, since the transportation was in interstate commerce and interest from the date of the loss is properly allowable under the Carmack amendment. 49 U. S. C. A. 114, § 20 (11). This exact question was settled by the very recent decision of this court in *Lamb v. Railway Express Agency, supra,* wherein we held the Washington rule should be applied.

The judgment is therefore modified by striking out the allowance of interest, but is otherwise affirmed.

HILL, C. J., FINLEY, OTT, and FOSTER, JJ., concur.